IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**PHYLLIS THOMPSON**                                                                                    **PLAINTIFF**

**V.**

CIVIL ACTION NO. 3:22-cv-399-DPJ-FKB

**VCP COVINGTON PARK I, LLC;**
**VCP MANAGER, LLC;**
**FORTIS PROPERTY MANAGEMENT, LLC;**
**TRACE MCCREARY, in her individual and official capacity;**
**AND JOHN DOES 1-10**                                                                            **DEFENDANTS**

## COMPLAINT

**(TRIAL JURY DEMANDED)**

COMES NOW Plaintiff, Phyllis Thompson, by and through counsel, and files this complaint against VCP Covington Park I, LLC, VCP Manager, LLC, Trace McCreary, in her individual and official capacity, and John Does 1-10 (collectively referred to as "Defendants") and in support would show the following:

### PRELIMINARY STATEMENT

1. This matter arises pursuant to the Fair Housing Act ("FHA") of 1968, as amended by the Fair Housing Amendments Act of 1988, 42 U.S.C. § 3601 *et seq*.

2. Additionally, this matter arises pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Plaintiff's claims arising under federal law pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, and 42 U.S.C. § 3613.

4. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2). A civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

5. Plaintiff is an adult resident of Hinds County, Mississippi whose address is 100 Covington Park Drive, Unit 514, Jackson, Mississippi 39212. Plaintiff is disabled as she legally blind.

6. Covington Park Apartments ("Covington Park") is a multifamily apartment complex located at 100 Covington Park Drive, Jackson, Mississippi 39212. The units at Covington Park are "dwellings" within the meaning of the Fair Housing Act, 42 U.S.C. § 3602(b).

7. VCP Covington Park I, LLC ("Defendant VCP") owns Covington Park. Defendant VCP is a corporation incorporated in Mississippi with a principal place of business of 2110 Powers Ferry Road, Suite 150, Atlanta, Georgia 30339. Defendant VCP may be served with process through its registered agent, Trace McCreary, 100 Covington Park Drive, Attn: Office, Jackson, Mississippi 39212.

8. VCP Manager, LLC ("Defendant VCP Manager") is the listed manager for Defendant VCP via the business filing with the Mississippi Secretary of State. Defendant VCP Manager may be served with process through its registered agent, Trace McCreary, 100 Covington Park Drive, Attn: Office, Jackson, Mississippi 39212 or 2110 Powers Ferry Road Southeast, Suite 150, Atlanta, Georgia 30339.

9. Fortis Property Management, LLC ("Defendant Fortis") manages, operates, and is responsible for Covington Park. Defendant Fortis is a corporation incorporated in Georgia with a principal place of business of 2110 Powers Ferry Road, Atlanta, Georgia 30339.

Defendant Fortis may be served with process through its registered agent, Paracorp Incorporated, 248 East Capitol Street, Suite 840, Jackson, Mississippi 39201.

10. Trace McCreary ("Defendant McCreary") is the listed manager for Defendant Fortis via the business filing with the Mississippi Secretary of State. Defendant McCreary may be served with process through its registered agent, Paracorp Incorporated, 248 East Capitol Street, Suite 840, Jackson, Mississippi 39201. Additionally, this party may be served in the individual capacity where she may be found.

11. John Does 1-10 are those individuals or entities, which are agents or work in partnership with Defendants and, upon information and belief, are in Mississippi and/or Georgia. These Defendants are presently unknown who/which caused or substantially contributed to the damages of Plaintiff. Said unknown Defendants will be identified when their identities become known to Plaintiff.

## AMOUNT IN CONTROVERSY

12. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

13. Plaintiff seeks punitive damages against Defendants. "[F]ederal courts in Mississippi have consistently held that a claim for an unspecified amount of punitive damages under Mississippi law is deemed to exceed the amount necessary for federal jurisdiction."[1]

---

[1] *Walker v. Scales*, No. 1:13CV227, 2014 WL 670216 (N.D. Miss. Feb. 20, 2014); *Montgomery v. First Family Fin. Serv. Inc*., 239 F. Supp. 2d 600, 605 (S.D. Miss. 2002) *Brasell v. Unumprovident Corp*., 2:01CV202-D-B, 2001 WL 1530342, at *2 (N.D. Miss. Oct. 25, 2001) (citing *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1255 (5th Cir. 1998); *Myers v. Guardian Life Ins. Co. of America, Inc.,* 5 F. Supp. 2d 423, 428-429 (N.D. Miss. 1998); *Marcel v. Poole Co*., 5 F.3d 81, 84- 85 (5th Cir. 1993); *Allstate Ins. Co. v. Hilben*, 692 F. Supp. 698, 701 (S.D. Miss. 1988)).

## FACTS

14. In July 2019, Plaintiff entered into a lease agreement to rent an apartment unit at Covington Park Apartments, specifically located at 100 Covington Park Drive, Unit 514, Jackson, Mississippi 39212.

15. Plaintiff was provided rental assistance through the United States Department of Housing and Urban Development ("HUD").

16. The first lease agreement was initially with Defendant Fortis.

17. The most current "Apartment Lease Contract" is with the apartment owner, Defendant VCP.

18. Plaintiff leased her apartment unit, Plaintiff noticed that water from the rain entered into her apartment unit.

19. Plaintiff contacted Defendants but did not receive a response.

20. Subsequently, Plaintiff noticed mold growing on the walls in her apartment unit.

21. Defendants eventually sent maintenance to Plaintiff's apartment unit. The maintenance worker (an agent of Defendants) painted over the mold but failed to conduct any other remediation.

22. When the mold returned, Plaintiff contacted Defendants. Notably, during the coronavirus pandemic, HUD officials were not performing any onsite inspections.

23. Eventually, after several conversations with agents of Defendants, two contractors arrived at Plaintiff's apartment unit and attempted to determine where the water leakage in Plaintiff's apartment originated.

24. The first contractor (Pedro), in the presence of an agent of Defendants, informed Plaintiff that the apartment (1) was not insulated; (2) the inside of the walls had mold and mildew;

(3) cracks were forming because of shifting; (4) and all of the siding would have to be replaced. Thus, Defendants knew that Plaintiff's apartment unit was uninhabitable.

25. In July or August 2021, a second contractor was accompanied with an agent of Defendants to Plaintiff's apartment unit. Plaintiff attempted to contact Defendants shortly after the contractor's visit. Plaintiff was informed that Defendants were awaiting quotes from the contractors for the aforementioned work to be done at this time.

26. In October 2021, Plaintiff requested to be relocated to another unit at Covington Park without the mold and rain entering the apartment unit or to be moved to one of their other properties. Defendants failed to respond to the same or remedy the issues in Plaintiff's apartment unit.

27. On November 13, 2021, Defendants forged Plaintiff's initials on a Waiver and requested funds outside of the HUD lease.

28. Thereafter, Plaintiff reported her apartment unit's conditions to HUD.

29. Because Plaintiff was disabled (legally blind) **and** after Defendants became aware that Plaintiff reported her apartment conditions to HUD, Defendants evicted Plaintiff.

30. Defendants have known about the issues in Plaintiff's apartment unit, especially the mold, for approximately three (3) years. Only when the HUD inspection failed the complex, Defendants moved for a non-renewal of Plaintiff's lease.

31. Plaintiff had her apartment unit swabbed and an air quality test performed, discovering black mold and other strands of mold were present in the unit. All of Plaintiff's personal property have been damaged by the conditions of the apartment unit.

32. Plaintiff has sustained personal injuries, including medical injuries, due to the mold in her apartment.

33. As a result of the foregoing, Plaintiff suffered damages as outlined below.

## CAUSES OF ACTION

### COUNT I – VIOLATION OF THE FAIR HOUSING ACT

34. Plaintiff realleges and incorporates herein by reference the allegations set forth above.

35. By the conduct set forth above, Defendants:

    a. discriminated in the rental of dwelling, refused to negotiate for the rental of, or otherwise made a dwelling unavailable because of Plaintiff's disability, in violation of 42 U.S.C. § 3604; and

    b. discriminated in the terms, conditions, or privileges of the rental of a dwelling because of Plaintiff's disability, in violation of 42 U.S.C. § 3604.

36. By conduct set forth above Defendants violated 42 U.S.C. § 3617 by retaliating against Plaintiff because Plaintiff reported Defendants actions and/or omissions as outlined in the facts to HUD.

37. With respect to the conduct alleged above, Defendants acted with willful disregard, malice, or reckless indifference. This conduct violated the Fair Housing Act.

38. Plaintiff is an aggrieved person within the meaning of 42 U.S.C. § 3602(i) and has been injured by Defendants' discriminatory conduct, including emotional distress, and violation of her federally protected rights.

39. Accordingly, Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs pursuant to the Fair Housing Act, 42 U.S.C. § 3613(c).

### COUNT II – AMERICANS WITH DISABILITIES ACT

40. Plaintiff realleges and incorporates herein by reference the allegations set forth above.

41. By conduct set forth above, Defendants violated 42 U.S.C. § 12101 by discriminating against Plaintiff due to her disability by failing to provide proper housing free from toxins and/or other unsafe conditions and failing to accommodate Plaintiff.

42. As aforementioned, the apartment (1) was not insulated; (2) the inside of the walls had mold and mildew; (3) cracks were forming because of shifting; (4) and all of the siding would have to be replaced. Plaintiff's apartment unit was uninhabitable.

43. As Plaintiff was legally blind, Defendants took advantage of Plaintiff's disability and vulnerability due to the same, by failing to properly remedy Plaintiff's issues in her apartment unit.

44. Plaintiff sustained damages as a result thereof.

## COUNT III – NEGLIGENCE/GROSS NEGLIGENCE

45. Plaintiff reiterates and incorporates the foregoing paragraphs.

46. Defendants were grossly negligent and/or acted in reckless disregard in failing to properly inspect, repair, and provide a safe environment for Plaintiff, free from toxins and other issues that were a detriment to Plaintiff's health and well-being.

47. As aforementioned, the apartment (1) was not insulated; (2) the inside of the walls had mold and mildew; (3) cracks were forming because of shifting; (4) and all of the siding would have to be replaced. Plaintiff's apartment unit was uninhabitable.

48. As a direct and proximate cause of Defendants' negligent, grossly negligent, and/or reckless acts and/or omissions, Plaintiff sustained damages set forth herein and all damages that will be provided at trial hereon.

49. Defendants' grossly negligent conduct rises to the level of willful, wanton, and reckless disregard for the safety Plaintiff, sufficient to warrant an award of punitive damages.

## COUNT IV – RECKLESS DISREGARD

50. Plaintiff reiterates and incorporates the foregoing paragraphs.

51. Plaintiff would show unto the Court that Defendants took actions that had reckless disregard for the safety and well-being of Plaintiff.

52. As aforementioned, the apartment (1) was not insulated; (2) the inside of the walls had mold and mildew; (3) cracks were forming because of shifting; (4) and all of the siding would have to be replaced. Plaintiff's apartment unit was uninhabitable.

53. Plaintiff sustained damages due to Defendants reckless disregard.

## COUNT V - INTENTIONAL INTERENCE WITH CONTRACT

54. Plaintiff reiterates and incorporates the foregoing paragraphs.

55. Defendants, Plaintiff, and HUD entered into an agreement in which Plaintiff would be a beneficiary of the HUD voucher assistance program.

56. On November 13, 2021, Defendants forged Plaintiff's initials on a Waiver and requested funds outside of the HUD lease.

57. Defendants intentionally, wrongfully, and fraudulently interfered with contract between HUD and Plaintiff.

58. Plaintiff sustained damages and loss and a result thereof.

59. Moreover, the acts of Defendants were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the Defendants, which constitutes malice.

## VI – BREACH OF CONTRACT

60. Plaintiff reiterates and incorporates the foregoing paragraphs.

61. Defendants breached the contract with Plaintiff as Defendants failed to maintain an inhabitable apartment unit.

62. Moreover, Defendants failed to remedy the known issues in Plaintiff's apartment unit, including the mold.

63. Plaintiff sustained damages as a result thereof.

64. Plaintiff is entitled to recover damages from Defendants in an amount to be proven at trial.

## VII- NEGLIGENCE OF JOHN DOES 1-10

65. Plaintiff reiterates and incorporates the foregoing paragraphs.

66. John Does 1-10 are entities, employees, agents, owners, operators, or persons whose names and identities are unknown at this time to Plaintiff, but who may have been working in conjunction with or in a joint venture or as a partner with Defendants and may be responsible for the Plaintiff's injuries and resulting damages. Plaintiff will amend the complaint to add the names of the parties herein referred to as John Does 1-10 when that information becomes available through discovery.

## DAMAGES

67. Plaintiff reiterates and incorporates the foregoing paragraphs.

68. As a direct and proximate consequence of Defendants' actions and/or omissions, Plaintiff was caused to suffer damages to her person and property.

69. Plaintiff's injuries and damages include at least the following:

    a. Pain and suffering;

    b. Trauma;

    c. Emotional trauma shock and stress;

    d. Emotional distress and mental anguish which Plaintiff suffered, suffer, and will continue to suffer;

    e. Loss of enjoyment of life; and

    f. Unspecified damages.

70. Compensatory Damages

    g. Plaintiff has suffered and continue to suffer from the multiple causes of action listed above stemming from the actions and failures of Defendants.

71. Punitive Damages

    h. Defendants' grossly negligent conduct rises to the level of willful, wanton, and reckless disregard for the safety of others.

    i. For that, Plaintiff is entitled to punitive damages in addition to its compensatory damages such that Defendants would be deterred from such unconscionable conduct in the future.

## ATTORNEY FEES AND OTHER REASONABLE COSTS

72. Plaintiff should be reimbursed for all the costs and fees with the enforcement of this lawsuit, including all reasonable fees for her attorney and other costs and expenses associated with this lawsuit.

## PRE AND POST JUDGMENT INTEREST

73. Pre and post judgement interest should be properly assessed against Defendants.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that the court adjudge that Defendants caused Plaintiff's injuries and damages due to the foregoing actions, and should award Plaintiff with compensatory and punitive damages, together with reasonable attorney's fees, costs of court and legal interest, and for such other relief as this Court may deem just and proper.

Respectfully submitted,
**PHYLLIS THOMPSON**

BY: ___/s/ Tiffany Horton-Williams___
      Tiffany Horton-Williams MS Bar #105269
      Horton-Williams Law Firm
      P.O. Box 720653 Byram, MS 39272
      Tel: 769-251-5785
      Fax: 769-251-5152
      Email: attyhortonwilliams@gmail.com